We'll move now to Appeal 24-1056, Philadelphia Indemnity Insurance Company et al. v. Kinsey & Kinsey, Inc. This case is procedurally complicated, but legally straightforward. The only issue the court has to decide is whether Kinsey's insurance policy covers the state court's judgment for breach of contract. Kinsey and its insurer agree that the policy— Do you mind if we start at the two arguments of the law in the double recovery? Is that reviewable by this court? Yes, I think it is, Your Honor. I think this goes to the waiver issue. I'll just point out that Kinsey argued this issue more than once in the district court, including in the briefing on the motions that were resolved and are now on appeal. I'll direct the court's attention to Docket 60 at page 2, as well as Docket 12 at page 8-9. Both those briefs specifically— Docket 60? I thought you had conceded that you only raised it in your TRO motion. So has that changed? We didn't concede that, but I admit that we did not cite Docket 60. I realized that as I was preparing for this oral argument. So we did actually cite it. This was in response to the other parties' cross motions. So I'm going to ask again. Did you concede, though, that you only raised it? I know you're raising Docket 60 now, but before, were we only looking at Docket 12? That was the only one cited in the brief. Yes, Your Honor. I apologize for that. All right. And so why are we able to review it now? We're able to review it because I think it was adequately preserved in the district court. This concept of double recovery sort of permeates this case. That's what it ultimately comes down to is whether Bellin should be able to recover again for what amounts to the same injury for which it already recovered from the settlement. I'm happy to address this double recovery issue more if Your Honor would like. I'd really like to focus my time on the language and the purpose of the policy. And what about the reservation of rights, the equity argument? Is that one waived as well? No, Your Honor. That's not waived. And so seeing that Philadelphia Indemnity agrees that the policy should apply, why would the reservation of rights argument apply in this instance? Your Honor, the district court dismissed the argument in a footnote because Philadelphia Indemnity is not contesting coverage. But that, to me, really proves the point. The policy is a contract between the insurer and its insured. And they both agree that it covers the judgment. The only one who disagrees is not a party to the contract. And so, if anything, that suggests that the policy does, in fact, cover the judgment because that's how the parties to the contract interpret it. But in any event— But doesn't the estoppel argument only come into play if the insurer disputes coverage? If—I missed the last part of your question. If the insurer disputes coverage, isn't that the only instance where estoppel comes into play? Um, if we raise—yeah, if we raised it as an estoppel argument, that's when it would come into play. But I think it's more than an estoppel argument. In any Illinois case, any Illinois court, have they employed this reservation of right argument when the insurer is not contesting? Not that we found, Your Honor. All right. So let's move to the wrongful act and walk our way through. Happy to. Thank you. The district court—just to back up and look at the big picture—the district court held that the policy does not cover the judgment because the policy covers only negligence and it excludes all claims for breach of contract. That narrow reading of the policy defies its text. It overlooks the basic purpose of an errors and omissions insurance policy, and it makes the policy all but meaningless to a small business that conducts all of its work pursuant to contracts. The end result, as I indicated, is that Bellin gets to recover $1.75 million for an injury worth less than half of that, and Kinsey might as well not have had any insurance at all. I'd like to focus on the grant of coverage first and then turn to the exclusions, which is how courts typically approach insurance contracts. The policy covers any wrongful act, which is defined to include a negligent act, error, or omission committed in the rendering of professional services. The district court read this to mean it covers only negligent acts, negligent errors, and negligent omissions, and that the judgment was not covered because it was not based in negligence. The district court erred in both respects. First, coverage is not limited to negligence, and it's key, I think, for the court to remember that in interpreting an insurance policy like this, the court must construe it as a whole, take into account the type of insurance and the nature of the risks involved, and the overall purpose of the contract. That's how this court described it earlier this year. The Bellin's brief calls the policy a standard errors and omissions policy, and that's exactly right, and the purpose of a standard errors and omissions policy, again, as this court explained in the Crum decision, is to ensure members of a particular professional group from liability arising out of the special risk such as negligence, omissions, mistakes, and errors inherent in the practice of the profession. Under the most reasonable reading of the policy in light of its purpose, it covers not only negligence, but also errors and omissions that might not meet the legal definition of negligence, although I'll note they probably often do. I'm wondering how your reading doesn't lead to moral hazards. If intentional errors and omissions are covered, an insured could just decide to stop performing on a contract knowing that their insurance company will be on the hook to defend them if they are ultimately sued, even if their behavior was dishonest. A few responses to that, Your Honor. First, I think the policy as a district court construed it, incentivizes perverse outcomes because it covers negligence, a company is indemnified for its carelessness, but not when it makes actual honest mistakes, even despite due care, and that does happen. I'm sure it happens all the time, is that something goes wrong in a big project, even though you did everything you could to prevent anything from going wrong, and so that, to me, is what the Supreme Court calls a contextually implausible outcome. Also, errors and omissions are not defined by the policy, so the court construes them under their ordinary meaning, and I don't think anybody construes a word like error or omission to mean a deliberate, intentional, deliberately wrongful act. I think most people recognize that it means an accident, something that you didn't mean for to happen. You made an error, you made a mistake. Is this the best case to make that argument? There's certainly a whiff in the record that global HR did not get installed, maybe because of negligence, but maybe not. Your Honor, I think, and that leads me right into Bellin's argument, which is that this was a knowing, deliberate breach of the contract. I'll start by just making clear the trial court did not make— Before we move, do you mind answering the question that Bellin does raise, and that's this contention that the argument regarding the proper construction of wrongful act was not raised below, that this argument is also waived? Well, Your Honor, the district court based its decision on its interpretation of the policy. Under the pressed or passed upon rule, it was preserved because that was the basis for the court's decision, and we're allowed to challenge that on appeal. But turning to the record from the trial court, I just want to make clear that the trial court did not find that Kinsey knowingly, deliberately breached the contract. The district court didn't make that finding. The jury didn't make that finding, and I don't read anything in the trial court to support that finding. The trial court, when it directed its verdict, never suggested that it was finding Kinsey purposely or deliberately or maliciously breached the contract. And the jury, I'll note, rejected every claim that required any finding of intent, including punitive damages, including the fraudulent misrepresentation claim. But looking to what actually did happen in the trial court, the court acknowledged when it issued the directed verdict what it called the period of confusion surrounding Kinsey's obligations. It stated, quote, there's evidence to support that. It recalled, and I'm quoting again, the representative of Bellin asserted that the GHR module is too new, and it said it cannot draw the conclusion that there's no evidence that there had been conversations about that. And if you read the transcript, there's a lot of discussion that took place in meetings and on phone calls between Bellin, between Kinsey, the software developer, about what version of the software Kinsey was supposed to be implementing. There seemed to be confusion about the terminology that was used, because there was terminology for the broader project, there was terminology for the narrower module, there was a version 10, there was a version 11, and I believe the module itself was updated during all of this. And so the terminology changed. And I think it's clear when you read the transcript, and the district court, excuse me, the trial court acknowledged this. There was confusion. Is what you just said referenced the reason for the Tomei agreement? I'm sorry, I'm not sure I understand the question. The confusion that you're talking about, is that the predicate for why this either Tomei or Thome agreement ended up getting negotiated? Well, actually, Your Honor, I'm not sure why that got negotiated, because we weren't involved in it. Kinsey was not involved. When we found out about it, we objected to it, because the insurer, in its view, maxed out the policy on the settlement that we had nothing to do with. So I hope that answers Your Honor's question. And that was during trial? That was during trial. That was after the first week of trial over the weekend. And then I'll note, the first thing they did on Monday morning is dismiss the negligence claim. And so we were left, Kinsey was left without any coverage for the rest of the trial. But in any event, I want to discuss the series modifier canon. That's what the district court relied on. First, I'll point out that the court never once addressed the purpose of an errors and omissions policy. It never addressed the types of risks that the insured is trying to insure against when it purchases a policy. It relied on the series modifier canon. That canon applies most forcefully when it would be odd to apply the modifier to only the first item in a series, when it would result in a contextually implausible outcome. And to address Your Honor's question from earlier, there is nothing implausible about a policy that covers non-negligent errors and non-negligent omissions, as well as negligent acts. That would not mean the policy would cover deliberately wrongful conduct, because I don't think that's a reasonable interpretation of the phrase error and omission. And even if those words could be construed that way, we have exclusions. The exclusions here specifically exclude deliberately wrongful conduct, like dishonest, fraudulent, criminal, malicious conduct, and knowingly wrongful acts. And so we don't think that's- How does that dovetail into your argument regarding exclusion A? Exclusion A, Your Honor, again, we think Bellin's reading of exclusion A results in a contextually implausible outcome, because under Bellin's reading, the policy covers only negligent errors and negligent omissions. The exclusion excludes errors and omissions that are dishonest, fraudulent, et cetera. And then the policy says nothing at all about the errors and omissions that the insured is most interested in insuring against. The whole reason it bought the policy was that it knows mistakes might happen even if they try and do everything right, and they use reasonable efforts. That, to me, again, is a contextually implausible outcome. And I'd like to reserve the remainder of my time. You may do so. Thank you. Mr. Brown, we'll move to you. Good morning. May it please the Court. This case is not an insurance coverage dispute between an insurer and an insured. It's about a set-off provision in a settlement agreement. Under that provision, Kinsey is entitled to set-off only if Kinsey's professional liability insurance policy provides coverage for the judgment arising from Kinsey's knowing breach of contract. This insurance policy does not cover wrongful acts committed knowingly. It doesn't even cover contract-based liabilities at all. It is limited solely to negligence. Without evidence in the record of negligence, and there is none, there can be no coverage, so there is no set-off under the settlement agreement. The district court thus correctly found that there is no coverage, so there is no set-off. It was right for at least three reasons. Number one, Kinsey's liability arose from a breach of contract done with knowledge that it was a wrongful act, which means coverage is excluded. Number two, Kinsey's insurance policy covers only negligent acts, negligent errors, and negligent omissions, and there was, as the district court put it, not one crumb in the state court's analysis to support negligence. And number three, nothing outside of the policy compels or even suggests a different result, and this court should affirm. On my first point, though the district court did not rely on exclusion FF in its ruling, I think it makes sense to start there because everyone, even Kinsey, agrees that there is no coverage for a wrongful act done with the knowledge that it was a wrongful act. So let's get into the facts. Kinsey contracted with Bellin to implement a software called Global HR, but Kinsey didn't follow through and do it. The record in this case shows that while this 15-month-long software implementation project was still underway, Bellin learned that Global HR was not being implemented. Bellin then confronted Kinsey's president, Brad Kinsey, to demand that Kinsey make good on its promise, but he refused and demanded over $136,000 of additional compensation above the contracted amount and in addition to the over $1 million that Bellin had already paid to have Global HR be implemented. That was the breach. The project was in flight. Kinsey could have still performed and avoided breaching the contract entirely, but decided not to. Kinsey made a business decision. It chose not to follow through on the services it promised to deliver for a fixed price, knowing full well it was obligated to complete those services under the contract. Can I interrupt you? And I do want you to go back on the train you're on. I take it from your presentation right now that you're saying for us to determine the relevant coverage, we should and could look beyond the mere fact that the state court found for Bellin on the breach of contract claim, look past that to the underlying events. To the proofs at trial, Your Honor, yes. Or can we just look to the actual judgment? Yeah, Your Honor can look to the judgment, to the state court's analysis to the judgment, and to the proofs at trial I believe is the standard for analyzing the duty to indemnify after a judgment has been entered. Okay, because you're going through the proofs at trial. I am, Your Honor. But it may not be necessary. It may not be necessary, but I think the facts are very strong under the circumstances here, and they're kind of swept under the rug by Kinsey's presentation, and so I'm trying to bring them to the floor. Okay, thank you. So this resulting knowing breach of contract was done with the knowledge that it was a breach, so the resulting liability falls squarely within exclusion FF, and there is no coverage. To be clear, this was not an honest mistake, as Kinsey would now have it. Let's compare the undisputed facts here to the honest mistake example from Kinsey's reply brief. So in that example, a contractor is hired to pour concrete, is handed a contract with a misprint that makes the start date of the project look like May 1 instead of May 7. He goes to the job site on May 1, pours the concrete, and ends up causing all kinds of damages. To make that hypothetical work for this case, it would be that the concrete guy went to the job site on May 1, but there's a project manager there saying, hey, we're not doing this on May 1, we're doing it on May 7, don't pour the concrete, and the concrete guy pours it anyway. That's precisely what we have here. It's not an honest mistake. Kinsey tries to avoid exclusion FF by obfuscating the record, claiming that there was some kind of While any purported confusion would not make this a covered claim under the policy regardless, it still merits dispelling this myth to explain why exclusion FF plainly applies. The record here shows that Kinsey's president, Brad Kinsey, knew exactly what he was required to do under the contract. In fact, Kinsey's trial counsel in the Wisconsin trial on the record had to admit that Mr. Kinsey was never confused about his company's obligation to implement global HR. Now recall that Kinsey and Mr. Kinsey were on trial for fraud. Confusion would have been quite helpful to their defense. So if their trial counsel could have pointed to evidence of Mr. Kinsey's confusion, he certainly would have, but he couldn't, so he didn't. This claim of confusion is nothing but a red herring. Kinsey also points to the jury forum where the jury rejected a finding that Kinsey acted maliciously or with intentional disregard for Bellin's rights. This argument fails for two reasons. First, setting aside that this section of the jury forum was about punitive damages, which are irrelevant to a breach of contract claim, malice or intentional disregard of rights is not what triggers exclusion FF. It requires only knowledge. And on that point, the record is clear. Kinsey knew that it was not implementing global HR and that it would breach the contract not to implement it, but it still chose not to do what it had promised. The second is this court's ruling in Baylor. There, the court drew a sharp line between an intentional breach of contract and some kind of bad faith motive, and a bad faith motive is what the jury was asked about here. Kinsey's motive or mindset in breaching the contract, as the court held in Baylor, is irrelevant. Moving on to exclusion H, and this one the district court did address and correctly found that it applies. That provision excludes claims arising out of any expressed warranties or guarantees or any liability you assume under contract unless you would have been legally liable in the absence of such contract. What do you do with the argument this morning that it was unclear what the requirements were under the contract? So Mr. Kinsey was the president of Kinsey & Kinsey, and it's crystal clear on the record that he was never confused. The only confusion that was cited by Kinsey was the confusion of an employee of the software developer, a woman named Kathy Kapp, who was an employee of Infor Lawson. She was perhaps confused about what Belin wanted or what Kinsey was doing, but Kinsey and Brad Kinsey, there's no evidence of their confusion. So getting back to exclusion H, here the claim arose out of an express warranty that Kinsey made in his contract with Belin to follow the agreed-upon statement of work and implement global HR. Kinsey tries to avoid this one by arguing that assume does not mean what the dictionary says it means, which is to take to or upon oneself. That's the first definition in Merriam-Webster, and it says nothing about taking anything from third parties. And let's think about the extraordinarily common phrase, assume the position. That doesn't talk about third parties, and it's one of the most common uses of the word assume. So here, you have no liability, then you take one on pursuant to a contract. That is excluded. In addition, the verb assume in exclusion H does not even apply to express warranties under exclusion H. The policy just excludes any claims arising out of express warranties. And in his contract with Belin, Kinsey expressly warranted that it would strictly follow the statement of work, which included the implementation of global HR. So exclusion H applies two times over. The district court was also correct in ruling that this exclusion does not render the policy illusory. There is still plenty of coverage because the exclusion carves out legal liabilities that would have existed in the absence of the contract. That carve-out was missing from the Crum-Forrester case on which Kinsey relies and makes it distinguishable from the facts here. For example, the negligent misrepresentation claim that Belin alleged but later dropped after the Tomei settlement, that would still be covered because Kinsey had a common law duty not to make negligent misrepresentations, not a contractual duty. Or say Kinsey had tried to implement global HR but ended up crashing Belin's entire system due to negligence. That would still be covered. And let's not forget, the insurer paid out a million-dollar settlement on Mr. Tomei's behalf based in part on his potential liability under common law for his misrepresentations. So there is coverage, just not for Kinsey's failure to perform on its contracts. Moving on to my second point. The district court also correctly ruled that there is no coverage because Kinsey's breach did not qualify under the policy's grant of coverage for wrongful acts, that is, negligent acts, errors, or omissions. There was no negligence that precipitated Kinsey's breach. Indeed, as the district court concluded, there is, quote, not one crumb in the state's court's analysis supporting the idea that the court thought that the breach of contract occurred due to negligence, end quote. In this appeal, Kinsey has not identified any crumbs that the district court missed because there are none. In making this ruling, the district court followed a long line of precedent, well over a dozen cases from state and federal trial courts and appellate courts around the country that have consistently held that the phrase negligent acts, errors, or omissions means negligent acts, negligent errors, or negligent omissions. This interpretation makes sense. As several of these cases set forth, it aligns with the series qualifier canon. It also aligns with the rules of English syntax under which a leading modifier, followed by a comma-separated series of nouns, modifies each of the subsequent nouns. It also aligns with the other provisions of the policy, specifically exclusion A. That provision excludes claims arising from any dishonest, fraudulent, criminal, or malicious act, error, or omission. Kinsey admits that the series qualifier canon and general rules of English syntax apply to exclusion A, that all of dishonest, criminal, or malicious modify each of act, error, and omission. The definition of wrongful acts in the policy is structured the exact same way. An initial adjective, negligent, followed by the same three nouns, act, error, or omission. These two provisions within the same policy with identical structures should be interpreted the same way. It also aligns with this court's ruling in Baylor, which I mentioned before, where it was held that intentional noncompliance with a contractual obligation is not covered by an insurance policy that covers negligent acts, errors, and omissions. Even if the noncompliance was done in good faith, in that case, on advice of counsel, there is still no coverage for knowing or intentional breaches of contract. Under a policy with identical language to the policy at issue here, motives don't matter, only actions, which cuts against Kinsey's position about an honest mistake even being covered in the first instance. Kinsey did manage to find three cases supporting its reading of the definition of wrongful acts, a Massachusetts state court case from 1995, a California state court case from 1958, and an Iowa state court case from 1993. These cases, all of them nonbinding, are unpersuasive. The origin of these three outliers is HSN, the California state courts from 1958. But this ruling was expressly based on the court's assumption, not an analysis of the phrase negligent acts, error, or omission. In fact, none of the parties, including the insurer, even argued that the word negligent modified errors or omissions. Instead, the court concluded that, quote, it must assume, end quote, that the word error would have its ordinary meaning unmodified by the word negligence. It did not cite the series qualifier canon. It did not cite the rules of English grammar and syntax. It did not contend with any arguments or authorities going the other way. This is not a persuasive case. The Massachusetts state case, USM v. First State, simply follows HSN and, again, relies on the plain meaning of the word error without regard to the modifier, negligent, that precedes it. No mention of the series qualifier canon, no mention of the rules of English grammar and syntax, and no grappling with the host of authorities going the other way. The Iowa case, employers' reinsurance v. Mutual Medical, made the same mistake, concluding, without any analysis at all, that negligent did not modify error or omission. That's it as far as cases that Kinsey cites in its favor that interpret the same phrase. Other cases it cites are parsing phrases with a different structure, such as error, omission, or negligent act, where the term negligent clearly does not modify anything but the word act. Those cases are irrelevant to this analysis. The cases on point that Kinsey cites, however, are true outliers. They fly in the face of interpretive canons and the generally accepted structure of the English language, and this court should not follow them. But this discussion is purely academic because Kinsey's argument rests on the notion that if it can rewrite the policy to remove the negligent modifier from error and omission, it can shoehorn Kinsey's contract breach into coverage as an honest mistake. But again, this was not an honest mistake. Kinsey knew its contractual obligations, had every chance to perform them, and chose not to. Now to my third and final point, Kinsey's other arguments that the policy is ambiguous, that the insurer waived coverage defenses by failing to issue a reservation of rights letter or the belated assertion of double recovery, none of them warrant reversing the district court's ruling. The policy is not ambiguous. The words are clear and not reasonably susceptible to different interpretations. Moreover, and perhaps more importantly, the cases on resolving ambiguities against the insurer only arise in the context of insured versus insurer, which is not the case here. And I see that I'm out of time. Unless the court has any questions, I will step away. No, thank you, Mr. Brown. Thank you. Mr. Zudema, we'll come back to you for rebuttal argument. Thank you, Your Honor. There is coverage, just not for Kinsey's failure to perform on his contracts. That is how Bellen interprets the policy. That policy provides cold comfort to a small business who only performs business pursuant to contracts. And in every case where something could go wrong, we'll be sued in contract. That is not what Kinsey thought it was getting when it bought its insurance. It's not what anybody would think they're getting with an errors and omissions policy. It's not a contextually plausible outcome. The insured is left with a sliver of the coverage that he reasonably intended or reasonably expected from his policy. And I'd like to address, I did not get much time to address the exclusion, but that came up. I'd like to address exclusion H first, if I may. That was the basis of the district court's decision. Again, that would make the policy meaningless, especially when the economic loss doctrine might apply to contracts like this. That would result in Kinsey only being sued in contract. And so in that event, the policy might as well not even exist. But setting that aside, the district court misread the exclusion. The exclusion removes from coverage any claims for liabilities you assume under contract. My opposing counsel cited Webster's online dictionary and nothing else. We cite several cases that actually interpret the word assume in a legal context. The contract does not say assume the position. It says assume the liabilities. And so, or it says assume under contract, rather. So we think the language of the exclusion is clear and we think it was misinterpreted. If exclusion H does apply, it's illusory. The exclusion uses remarkably broad language. It excludes claims arising out of resulting from, based upon or in consequence of, directly or indirectly, any express warranties or guarantees or any liability you assume under contract. I can't imagine a broader provision. And it's certainly broader than the exclusion in Crum, which this court held, well, the exclusion in Crum excluded claims just based upon or arising out of breach of contract. That is comparatively pretty simple provision. And there, the court held that that even narrower language encompasses any claim that involves the contractual relationship. It's the same outcome here. As the district court recognized, Kinsey does not render professional services without a contract. So the policy covers only certain acts that necessarily involve the contractual relationship. And then it excludes all acts that involve the contractual relationship. That is a definition of an illusory policy. Thank you very much, Mr. Zurima. The case will be taken under revisement.